IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Plaintiff*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 1:10-cv-510 |
| DYNMCDERMOTT PETROLEUM OPERATIONS COMPANY, *Defendant*, | § § § § | JURY TRIAL DEMANDED |

## DEFENDANT'S MOTION FOR ATTORNEYS' FEES, PARALEGAL'S FEES, AND EXPERT EXPENSES AGAINST PLAINTIFF

TO THE HONORABLE UNITED STATES FEDERAL JUDGE:

COMES NOW, Defendant, DynMcDermott Petroleum Operations Company ("Defendant"), and moves to recovery its attorneys' fees, paralegal's fees, and expert expenses against the Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"), and in support thereof would show unto the Court the following:

## I.
## INTRODUCTION

Defendant is a prevailing defendant[1] entitled to attorneys' fees (including paralegal's fees) against the EEOC in defending claims involving the ADA and ADEA. Under the ADA, Defendant is entitled to attorneys' fees because Plaintiff's ADA lawsuit was frivolous, unreasonable, groundless, and Plaintiff continued to litigate after it clearly became frivolous, unreasonable and groundless. In particular, Plaintiff failed to perform a competent investigation, failed to satisfy its procedural conditions precedent to filing suit, and the overwhelming weight of evidence supported Defendant's claims.

---

[1] This Honorable Court granted Defendant's Amended Motion for Summary Judgment on December 13, 2011, in its Memorandum Opinion and Order [Dkt # 117]. *Thomas v. Trico Prods., Corp.*, No. B-05-174, 2007 WL 922237, *2 (S.D. Tex. Mar. 22, 2007) (defendant that was awarded summary judgment is a prevailing defendant). The Court entered its Final Judgment on February 15, 2012 [Dkt # 119].

Under the ADEA, Defendant is entitled to attorneys' fees (including paralegal's fees) because Plaintiff's lawsuit was mooted once it received information that Lewis was insulated from the entire hiring process, Plaintiff failed to perform a competent investigation, and Plaintiff's claims were devoid of any credible evidence.

Under 42 USCA § 2000e-5(k) and Fed. R. Civ. P. 26(b)(4)(E), Defendant is entitled to reasonable and necessary retained testifying expert expenses incurred in defending this lawsuit. In defending this lawsuit, Defendant was forced to hire three testifying experts that were vital in defending and supporting Defendant's contentions.

## II.
## FACTS

Defendant, under a contract with the Department of Energy ("D.O.E."), maintains various storage facilities for the Strategic Petroleum Reserve. *Ex. 1 Lewis' Depo.*, pg. 26-27. In 2008, one of Defendant's Maintenance Planner-Scheduler positions became available at one of the storage facilities ("Big Hill Storage Facility"). *Ex. 2, Wood's Depo.*, pg. 137, ln. 22-25. Phillip Michael Swafford ("Swafford" or "Charging Party") applied for the position on February 1, 2008. *Ex. 3, DM0126 attached as Exhibit 8 to Hughes' Depo.* On February 7, 2008, Tim Lewis, the Big Hill site director, allegedly made statements about Swafford's age and his wife's cancer. *Ex. 2, Wood's Depo.*, pg. 150, ln. 5-8. Ray Wood, the hiring manager responded to Lewis that "[i]f these are the requirements, you could do the hiring." *Id.*, pg. 150, ln. 10-11. In response, Lewis told Wood that he was tired of his insubordination, and was going to give him a CAM ("Corrective Action Memorandum").

After the meeting, Lewis sent an email to Wood and others stating he would be on the "hiring board" for the position in question. *Ex. 1, Ex. 15 attached to Lewis' Depo.* Shortly thereafter, Bernadette Nelson, a Department of Energy employee at the meeting, sent Lewis an email regarding his statements and a link to a webpage on age discrimination. *Ex. 1, Exs. 16 and 17 attached to Lewis' Depo.* Additionally, Wood went to Lewis' office and said "Tim, you

2

know what you said is against federal law" and "I won't break a federal law for you or anybody." *Ex. 2, Wood's Depo.*, pg. 153, ln. 2-9.

Lewis' supervisor, Deborah Hojem, became aware of these events almost immediately after they occurred, and she called Lewis and told him that his statements were "highly inappropriate" and against DynMcDermott's rules. *Ex. 4, Hojem's Depo.*, pg. 42-43, ln 6-19. Additionally, in reference to Lewis's email, Hojem told Lewis that he would not be on the hiring board or participate in any way in the hiring of the planner/scheduler. *Id.*

At 9:21 a.m. on February 7, Lewis circulated an email to Wood and others advising that he would not be on the hiring committee. *Ex. 4, Hojem's Depo.*, Ex. 1 [DM0983] to and testimony at pg. 71, ln. 4-12. Hojem talked to Lewis again February 7 and again on Monday, February 11 regarding the CAM. Hojem told Lewis that he could not issue a CAM to Wood because the CAM was inappropriate and did not make sense. *Id.* at pg. 122, ln. 17-25.

Hojem and Wood met on February 12, 2011, Hojem assured Wood that he would not receive a CAM from Lewis, and that there would be no repercussions, backlash, or adverse actions against Wood. *Id.* at pg. 125, ln. 10-19 and pg. 29, ln. 1-13. To make sure there was no backlash, Hojem talked to Lewis and Wood several times each week. *Id.* at pg. 129-130. Wood stated that he didn't have any concerns about the hiring process or who he would hire after talking to Hojem. *Ex. 2, Wood's Depo.*, pg. 164, ln. 1- 4. Thereafter, Wood had no concerns that Lewis would try to take action against Wood if he didn't like Wood's decision. *Id.* at pg. 164, ln. 4-10.

In addition to numerous telephone conferences, Hojem had a private "closed door" meeting with Lewis on the date of the interviews. *Ex. 4, Hojem's Depo.*, pg. 145, ln. 19-25. The purpose of this meeting was to verbally discipline Lewis for his actions and tell him that if it happened again, she would issue a CAM to Lewis. *Id.* at pg. 86-87, ln. 25-5.

Wood, as the hiring manager, identified the number of candidates to be interviewed and identified the candidates to be interviewed. *Ex. 4, Hojem's Depo.*, pg. 53-54, ln. 6-9; and *Ex. 2, Wood's Depo.*, pg. 174, ln. 6-11. The candidates were Mike Swafford, Stephen Sajewicz, and Mark Thomas.  Wood, Hojem, and DuBois comprised the hiring committee and conducted the interviews. *Ex. 2, Wood's Depo.*, pg. 177, ln. 1-15.

Thomas was ultimately hired for the position based on the following reasons:[2]

- Thomas' resume indicated more experience as Thomas had been working in scheduling, planning and logistics in the ARMY and had no substantial breaks in what he was doing. *Ex. 2, Wood's Depo.*, pg. 183, ln. 14-21; pg. 184, ln. 10-13; pg. 169-170, ln. 24-10. Thomas' resume is attached to Wood's Deposition as Exhibit 15 (with discussions about same on pp. 197 *et seq.*).
- Swafford had been out of the work longer than Thomas. *Id.*, pg. 203-204, ln. 13-2.
- Wood asked Swafford about his memory of SAP.[3] *Id.*, pg. 196-197, ln. 13-5. Swafford admitted he had not worked with SAP for 5-8 years and it might take him a while to get caught up. *Id.* Thomas said he used SAP in the military and was using the SAP system at that time. *Id.*, pg. 196-197, ln 13-5. Mr. Swafford admitted to this 5-8 year gap in his deposition as well as discussions in the interview about the gap. *Ex. 5, Swafford's Depo.*, pg. 112, ln. 1–4. Swafford admitted in his interview that it would take between 2-4 months for him to get up to speed on SAP. *Id.* at 113.
- Wood felt Thomas interviewed very well. *Ex. 2, Wood's Depo.*, pg. 183, ln. 14-21 and pg. 184, ln. 10-13.
- Wood felt Thomas communicated better, and attributed this to Thomas' military training. Wood stated this training teaches soldiers how to interview and communicate better. *Ex. 2, Wood's Depo.*, pg. 184, ln. 10-13.
- Wood felt Thomas was more energetic and outgoing. *Ex. 2, Wood's Depo.*, pg. 184, ln. 17-20.
- Wood felt Swafford had been an average employee before and lacked initiative. *Id.*, pg. 203-204, ln 13-2.
- Wood stated that if he has two candidates that are equally qualified, he would take the veteran because they are more disciplined, and as a veteran of the Vietnam War, Wood was partial to veterans. *Id.*, pg. 28, ln. 16-23.  Thomas was a disabled veteran of the Iraq War. *Id.* at 199.

DynMcDermott's Candidate Evaluation Form contained spaces to rank job candidates in several areas, including education, experience, technical skills, communication skills, interpersonal skills, and customer service skills.  Wood's thoughts in scoring the candidates were as follows:

---

[2] *Ex. 2, Wood's Depo.*, pg. 183, ln. 14-21.
[3] SAP is a commercially available software program created by Enterprise Resource. *Ex. 4, Hojem's Depo.* pg. 201, ln. 1-7. The SAP program is utilized extensively by DynMcDermott at the Big Hill site and throughout the organization. *Id.*, pg. 200-201, ln. 22-16.

4

- "Communication Skills" and "Interpersonal Skills." Wood felt that Thomas' superior interview was relevant to "communication skills" and "interpersonal skills." *Id.*, pg. 185, ln. 5-18.
- "Education." Thomas's score was a 2 and Swafford's score was as a 1. *Id.*, pg. 186-187, ln. 23-17. Thomas scored higher because of his Army courses in planning, scheduling, and logistics and more college. *Id.*, pg. 186-187, ln. 23-17.
- "Experience." Although Wood felt that Thomas had more experience than Swafford in a number of these areas, both were ranked the same because the score keepers could not go higher than "2." *Id.*, pg. 188, ln. 18-25.

The decision to hire Mark Thomas out of the three final candidates was Wood's decision. *Ex. 2, Wood's Depo.*, pg. 222, ln. 5-17. Lewis' previous statements about Swafford did not influence Wood's decision. *Id.* at. 237. Hojem believes that the interviews were conducted fairly and in accordance with Defendant's procedures. *Ex. 4, Hojem's Depo.*, pg. 117, ln. 11-21.

Lewis did not have any role in the process of selecting the individual to fill the position. *Ex. 1, Lewis's Depo.*, pg. 279, ln. 3-22. He did not participate in any of the interviews for the position in question. *Id.* He did not have any input whatsoever into which of the three candidates should have been picked for the position. *Id.*

## III.
## ARGUMENTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES UNDER THE ADA

Under 42 USCA § 2000e-5(k), a "court, in its discretion, may allow the prevailing party . . . reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 USCA § 2000e-5(k). Under United States Supreme Court and Fifth Circuit precedent, a prevailing ADA defendant can recover attorney's fees from a plaintiff (including the EEOC) if the claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *EEOC v. AGRO Distribution, LLC*, 555 F.3d 462, 472 (5th Cir. 2009) (upholding award of attorney fees in ADA case against the EEOC because the lawsuit lacked foundation after the charging party admitted in his deposition that he was not substantially limited in a major life activity). When the EEOC brings

the lawsuit an extra wrinkle is added to the legal analysis, and prior to filing suit the EEOC "should at least satisfy itself that the claim it is supporting is bona fide." *EEOC v. IPCO Hosp. Supply Co. Dental Prosthetics Div.*, 565 F.Supp. 134, 135 (S.D.N.Y. 1983) (differentiating the legal burden a prevailing defendant must satisfy in obtaining attorney fees against the EEOC, as opposed to an individual plaintiff). "The statute [42 USCA § 2000e-5(k)] vests the decision as to attorney's fees in the sound discretion of the trial court." *E.E.O.C. v. Tarrant Distributors, Inc.*, 750 F.2d 1249, 1250-1251 (5th Cir. 1984). A district court's decision on attorney fees under 42 USCA § 2000e-5(k) shall not be disturbed absent a clear finding of abuse of discretion. *Id.* at 1251.

Numerous courts, under a host of different circumstances, have held that the EEOC engaged in frivolous, unreasonable, or groundless litigation or continued to litigate after the litigation became the same, and have awarded attorney's fees to the prevailing defendant.[4] In *EEOC v. IPCO Hosp. Supply Co. Dental Prosthetics Division*, the district court awarded attorney fees to the prevailing defendant because the EEOC had failed to competently investigate the charging party's story "and the defendant's good faith would have been evident to any competent investigator who took the trouble to interview the persons involved."   565 F.Supp. 134, 135 (S.D.N.Y. 1983); *cf. E.E.O.C. v. Jordan Graphics,* Inc., 769 F.Supp. 1357 (W.D.N.C. 1991) (requiring the EEOC to pay prevailing defendant's attorney fees because it should have been apparent to the EEOC after the close of discovery that the defendant's employment practices were not discriminatory).   Additionally, in *EEOC v. Pierce*, the appellate court upheld an award

---

[4] *E.E.O.C. v. Bellemar Parts Industries, Inc.*, 868 F.2d 199 (6th Cir. 1989) (EEOC liable for attorneys' fees incurred by employer in successful defense); *EEOC v. Shoney's, Inc.*, 542 F.Supp. 332, 336-339 (D.C. Ala. 1982) (requiring the EEOC to pay the defendant's attorney's fees when the court determined *inter alia* that the EEOC acted in bad faith by "twisting" the initial statements made by the charging party in an attempt to make his complaint into one cognizable under Title VII); *Neidhardt v. D.H. Holmes Co., Ltd.*, 583 F. Supp. 1271 (E.D. La. 1984) (employer who prevailed in sex discrimination action allowed to recover fees from the EEOC because the EEOC vigorously pursued the plaintiff's frivolous and unreasonable claims); *EEOC v. Datapoint Corp.*, 457 F.Supp. 62 (W.D.Tex. 1978); *EEOC v. Bendix Corp.*, 435 F.Supp. 76 (M.D.Fla.1977).

of attorney fees against the EEOC because it acted unreasonable when it failed to satisfy procedural and regulatory conditions precedent to filing suit. 669 F.2d 605, 609 (9th Cir. 1982).

A prevailing defendant may also be entitled to attorneys' fees against the EEOC when the overwhelming weight of the evidence supports the defendant's position. For example, in *EEOC v. Union Camp Corp.*, although the EEOC had established its Title VII *prima facie* case, the court awarded attorneys' fees against the EEOC because the evidence overwhelmingly supported the defendant's position. 536 F.Supp. 64, 66 (D.C. Mich. 1982); *see also EEOC v. First Alabama Bank of Montgomery*, 595 F.2d 1050, 1056 (5th Cir. 1979) (holding that defendant was entitled to attorneys' fees against the EEOC because the EEOC's action was brought on "nebulous grounds" and there was "no evidence" to sustain the EEOC's claims). In *Union Camp Corp.,* the court stated the following in awarding attorneys' fees:

> The only hope for EEOC's case was that the Court would reject the overwhelming evidence, accept what little evidence there was favorable to the EEOC, and infer discrimination at every turn to fill in the evidentiary gaps. . . . [P]laintiff chose, despite notice, to pursue the case through trial long after discovery should have made it obvious that there was no case to pursue. This matter is a prime example of an attitude on the part of government agencies, the EEOC in particular, which this Court has viewed with alarm from time to time. Here the charging party cries discrimination and the EEOC, despite an utter lack of evidence, sympathetically files suit, hoping that defendant will surrender rather than go to trial. When, as here, defendant refuses to knuckle under, EEOC goes to a lengthy trial, tries the case poorly, loses, and hopes a lesson has been taught. A better case for an award of attorney's fees could not be made.

*Id.* (footnote added).

Similarly, in *EEOC v. Peoplemark, Inc.*, the EEOC alleged that the defendant had a hiring policy (improper consideration of arrest-conviction records) with an adverse impact on African Americans. No. 1:08-CV-907, 2011 WL 1707281, *2 (W.D. Michigan 2011). However, during the discovery process, the company provided clear evidence that no such policy existed. *Id.* at 3-5. Nonetheless, the EEOC continued to pursue the case for two more years, requiring the company to expend great sums on the defense. *Id.* The court ruled that the EEOC

should pay all attorneys' fees from the point it should have known its case was without foundation. *Id.* at 5-6.

Under our facts, Defendant is entitled to attorneys' fees because it (1) is a prevailing defendant, and (2) Plaintiff's ADA lawsuit was "frivolous, unreasonable, groundless, and the plaintiff continued to litigate after it clearly became so."[5]  Under the court's reasoning in *EEOC v. IPCO Hosp. Supply Co. Dental Prosthetics Division*, Plaintiff's lawsuit was unreasonable and groundless because the Plaintiff's perfunctory investigation of Swafford's claim was improper, predetermined, selective to evidence supporting Plaintiff's lawsuit, dismissive of evidence supporting Defendant's defenses, and was performed in an arbitrary and capricious manner. 565 F.Supp. 134, 135 (S.D.N.Y. 1983).  Martin Ebel (Plaintiff's 30(b)(6) deponent) testified that an investigation that simply seeks to support the EEOC's position is "not an objective and fair way to go about investigating." *Ex. 6, Ebel Depo.*, pg. 69, ln. 13-22.  Notably, in the case at bar, Plaintiff's investigation was solely focused on supporting the EEOC's position.  Defendant attaches and incorporates by reference as though fully set forth *Ex. 7, Dione Heusel's Affidavit*, for evidence to establish that the investigation was unreasonable.  The following passages from Exhibit 7, demonstrate the investigation was unreasonable:

- The EEOC's notes from the interviews differ significantly from the notes taken by Heusel.  EEOC's notes focus on specific facts favorable to the EEOC while downplaying information favorable to DynMcDermott. *Ex. 7 Heusel Affidavit.*
- Deborah Hojem, Tim Lewis' direct supervisor, was never interviewed by the EEOC.  Also, no weight was given to the fact that Hojem verbally disciplined Lewis, vigilantly observed Lewis after the incident, and insulated Lewis from the hiring decision. *Id.*
- The EEOC did not investigate or consider qualifications of Mark Thomas.[6]  Instead, the EEOC blindly alleges that a "less qualified person" was hired for the job. *Id.*
- Christi Schluter (EEOC investigator) stated to Defendant that they would send a formal letter or email asking for additional information; however, the EEOC forewent

---

[5] Under the second prong, Defendant is entitled to attorneys' fees if it can establish *any* of the four factors (*i.e.*, frivolous, unreasonable, groundless, or plaintiff continued to litigate after it clearly became so).

[6] The EEOC's own website states that an employer under the ADA may give preference to a disabled veteran (Thomas) over a qualified applicant without a disability (Swafford). http://www.eeoc.gov/facts/veterans-disabilities-employers.html (last checked December 15, 2011). However, the EEOC seemingly failed to take into account any of Thomas's qualifications, let alone the fact he was a disabled veteran.

this valuable information and issued the reasonable cause determination before sending a request for this information. *Id.*

If Plaintiff would have performed a reasonable investigation, it would have determined *inter alia* the following before filing its lawsuit: (1) Lewis was insulated from the hiring decision and (2) it was not unreasonable for Defendant to conclude that Thomas was clearly more qualified than Swafford for the Maintenance Planner Scheduler position.

Additionally, under *EEOC v. Pierce*, Plaintiff's lawsuit was unreasonable and groundless because Plaintiff failed to satisfy procedural and regulatory conditions precedent to filing suit. 669 F.2d 605, 609 (9th Cir. 1982). The EEOC must satisfy the following conditions precedent before filing suit: (1) an investigation of the charge, and (2) a determination by the Commission that "reasonable cause" exists to believe that the charge is true. *EEOC v. Premier Operator Servs., Inc.*, 75 F. Supp.2d 550, 562 (N.D. Tex. 1999). As demonstrated above, Plaintiff's investigation was unreasonable, and this resulted in an arbitrary and capricious "reasonable cause" finding. While the EEOC's investigation and "reasonable cause" determination are entitled to deference, such "deference to the EEOC's determinations is consistent with the Administrative Procedures Act [APA] which provides that an agency's actions, findings, and conclusions should be set aside if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *EEOC v. Cal. Psychiatric Transitions, Inc.*, 725 F.Supp.2d 1100, 1112 (E.D. Cal 2010).[7] An investigation and subsequent "reasonable cause" determination is considered "arbitrary and capricious" when the agency fails to consider relevant facts and there is no rational connection between the facts and determination. *See Stewart v. Potts*, 996 F.Supp. 668, 674 (S.D. Tex. 1998).[8] Under our facts, Defendant was subjected to an

---

[7] *See also Smith v. Univ. Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972); *EEOC v. Airguide Corp.*, 539 F.2d 1038, 1040 (5th Cir. 1976) ("It is reasonable to conclude that Congress did not intend to allow the Commission to decide capriciously or arbitrarily whether or not notice of a charge of discrimination [one of the administrative and jurisdictional prerequisites] is to be sent to the alleged violator.").

[8] *See e.g., BCCA Appeal Group v. U.S. E.P.A.*, 355 F.3d 817, 824 (5th Cir. 2003) (holding that an investigation and subsequent decision of an agency is "arbitrary and capricious" when the agency has considered impermissible

unreasonable investigation that did not take into account all the relevant facts and resulted in an arbitrary and capricious "reasonable cause" determination that should be set aside; therefore, Plaintiff's lawsuit was unreasonable because it failed to satisfy all its conditions precedent to filing its lawsuit.

In the alternative, since Plaintiff's lawsuit hinged on Lewis being involved in the hiring decision, Plaintiff's lawsuit became frivolous, unreasonable, and groundless once it knew, or should have known, that Lewis was not involved in the hiring decision.  Plaintiff should have been acutely aware that Lewis had no role in the hiring decision throughout its investigation, or at latest in the early phases of discovery.  There is a myriad of documents/testimony that clearly establishes that Lewis was categorically insulated from the hiring decision and exercised no influence over the decision maker ("Wood"). *Ex. 2, Wood's Depo.*, pg. 152, ln. 15-22 (Wood rebuffing Lewis's alleged discriminatory statements by stating "If those are the requirements, you do the hiring."); pg. 153, ln. 2-9 (Wood telling Lewis that Lewis's statement was against federal law and he would not break the same); pg. 174, ln. 6-11 (Wood identified the candidates to be interviewed); pg. 177, ln. 1-15 (Lewis was not on the hiring committee); pg. 222, ln. 5-17 (the decision to hire Thomas was Wood's decision with input from DuBois and Hojem); pg. 237 (Lewis's statements about Swafford did not influence Wood's decision); *Ex. 1, Lewis Depo.*, pg. 279, ln. 3-22 (Lewis testified that he had no role in the selection process, the interviews, or the hiring decision); *Ex. 8, Kenneth (Ray) Wood's Affidavit* (Lewis sent an email stating that he would not be on the hiring board); *Ex. 4, Hojem Depo.*, pg. 53-54, ln. 6-9 (Wood determined the number of candidates and candidates to interview); pg. 71, ln. 4-12 (Lewis took no part in the hiring committee); pg. 129-130 (Hojem talked with Lewis multiple times after the incident). Given the overwhelming weight of evidence, Plaintiff's lawsuit became frivolous, unreasonable,

---

factors, failed to consider important aspects of problem, or offered explanation for its decision that is contrary to record evidence); *Steere Tank Lines, Inc. v. I.C.C.*, 703 F.2d 927 (5th Cir. 1983) (same).

and groundless once it knew, or should have known, that Lewis was not involved in the hiring decision.   Plaintiff clearly did not satisfy itself that its claims were "bona fide;" instead, it brought its lawsuit on "nebulous grounds" hoping the Defendant would surrender rather than go to trial.

Based on the foregoing, Defendant is entitled to attorneys' fees incurred in defending against the EEOC's ADA claim.

**IV.**
**ARGUMENTS AND AUTHORITIES FOR AWARD OF ATTORNEYS' FEES UNDER THE ADEA**

A district court may award attorneys' fees to a prevailing defendant in an ADEA case if the defendant establishes that the plaintiff litigated "with recklessness, bad faith or improper motive." *Moss v. BMC Software, Inc.*, No. H-08-0225., 2009 WL 1810963, *8 (S.D. Tex. June 25, 2009) (citing *Hogue v. Royce City,* 939 F.2d 1249, 1256 (5th Cir.1991)). In *E.E.O.C. v. Hendrix College*, the EEOC sought an injunction against the defendant alleging that it was violating the ADEA's recordkeeping regulations; however, before the lawsuit was filed, the defendant changed its recordkeeping policy to conform with the ADEA. 53 F.3d 209, 210-11 (8th Cir. 1995).  *Id.*  Nonetheless, the EEOC filed suit contending that the defendant's refusal to sign a conciliation agreement "called into question" the defendant's commitment to adhering to the ADEA's requirements.   *Id.*   The appellate court disagreed and awarded the defendant attorney fees because the lawsuit was litigated in bad faith.  *Id.* at 211. The court reasoned that the crux of the EEOC's lawsuit was mooted once the Defendant changed its policy. *Id.*  Further, the EEOC could have performed an investigation to substantiate or discredit its claims, but instead "chose to file a lawsuit without any apparent factual basis to show that a substantial likelihood of a recurrence existed." *Id.*; *see e.g., EEOC v. O & G Spring and Wire Forms Specialty Co.*, 38 F.3d 872 (7th Cir. 1994) (awarding attorney fees in ADEA case to prevailing defendant because the EEOC's case was devoid of evidence indicating that the employees'

11

termination was pretextual, and the EEOC had attempted to create a case with little more than "thin air").

Under our facts, Defendant is entitled to an award of attorney fees because it (1) is a prevailing defendant, and (2) Plaintiff litigated with recklessness and bad faith.[9]  Similar to the EEOC's "bad faith litigation" in *Hendrix College*, Plaintiff's lawsuit was mooted once it received information that Lewis was insulated from the entire hiring process.  Additionally, instead of performing an unbiased investigation that would have revealed crucial flaws in its ADEA claims (*e.g.,* Thomas qualifications and Lewis's insulation from the hiring), Plaintiff filed its lawsuit willfully-blind and devoid of any credible evidence to establish that Lewis was involved in the hiring decision.  Based on the foregoing, Plaintiff's lawsuit was litigated with recklessness and bad faith and Defendant is entitled to attorneys' fees incurred in defending the ADEA claim.

## V.
## AMOUNT OF ATTORNEYS' FEES, PARALEGAL FEES, AND EXPERT EXPENSES

Defendant seeks the following reasonable and necessary fees that have been incurred by Defendant: (1) attorneys' fees; (2) paralegal's fees; and (3) expert expenses.  Defendant's reasonable and necessary attorneys' fees that have been incurred in defending against Plaintiff's ADA and ADEA claims amount to $180,507.50[10]. *Ex. 9, James Henges Affidavit, filed under seal; Ex. 10, Frank Messina Affidavit, filed under seal.*  Defendant believes that this amount is reasonable and necessary in light of the following factors: time and labor required; novelty and complication of the issues; skill required; whether the attorney had to refuse other work to litigate the case; attorneys' customary fees; whether fee is fixed or contingent; whether the client or case circumstances imposed any time constraints; the amount involved and the results obtained; attorneys' experience, reputation, and ability; whether the case was "undesirable;"

---

[9] Under the second prong, Defendant is entitled to attorneys' fees if it can establish *any* of the two factors (*i.e.,* recklessness or bad faith).

[10] This amount is comprised of the following fees: James Henges' attorney fees amounting to $144,900.00; Frank Messina's attorney fees amounting to $34,920.00; and Jay Old's attorney fees amounting to $687.50.

customary fee for similar work in the community; nature and length of relationship with the clients; and awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) *(abrogated on other grounds)*; *Rutherford v. Harris County, Texas*, 197 F.3d 173,192 (5th Cir. 1999).  Given the fact that Plaintiff's ADEA and ADA claims were intertwined and warranted similar defense time allocation, Defendant's attorneys' time is equally split between defending each claim.

A prevailing party may recover attorneys' fees for paralegal work to the extent the work is legal rather than clerical. *Johnson v. Big Lots Stores, Inc.*, 639 F.Supp.2d 696, 705 (E.D.La. 2009) (citing *Vela v. City of Houston*, 276 F.3d 659 (5th Cir.2001)).  Defendant seeks the following amount in reasonable and necessary paralegal fees that have been incurred in this lawsuit—$2,040.00. *Ex. 9, James Henges Affidavit.*  These paralegal fees were paid for work that was legal rather than clerical. *Johnson*, 639 F.Supp.2d at 705.

Under 42 USCA § 2000e-5(k), this Court may allow the prevailing party reasonable expert fees.  42 USCA § 2000e-5(k).  In *EEOC v. Peoplemark, Inc*, the defendant was a prevailing party after the court granted its dismissal against the EEOC's claims. No. 1:08-CV-907, 2011 WL 1707281, *10-12 (W.D. Michigan 2011).  The defendant sought expert fees ($526,172.00) under 42 USCA § 2000e-5(k), and the court granted the same. *Id.*  The court reasoned that the expert reports were necessary and instrumental in the defendant's defenses against the EEOC's claims; thus, the expert fees were properly awarded to the defendant. *Id.* Under our facts, Defendant seeks the following reasonable and necessary expert expenses $30,017.50[11].  These expert expenses were necessary, reasonable, and incurred by Defendant in obtaining the services of the following experts: (1) Dr. Charles Hawkins; (2) Robert Cox; and (3) Dr. Edward Gripon. *Ex. 11, Defendant's Supplement Disclosure Response.* These experts were

---

[11] This amount is comprised of the following fees: (1) Dr. Charles Hawkin's fees were $4,387.50; (2) Mr. Robert Cox's fees were $6,500.00; and (3) Dr. Edward Gripon's fees were $19,130.00. *Ex. 12, Dr. Charles Hawkins Expert Expenses; Ex. 13, Mr. Robert Cox's Expert Expenses; Ex. 14, Dr. Edward Gripon Expert Expenses.*

necessary and instrumental in defending against Plaintiff's ADEA and ADA claims. For instance, Dr. Hawkins was Defendant's economist and was vital in supporting Defendant's allegations that Swafford failed to mitigate his damages and the opportunity costs associated with Swafford's failure to secure other work. Dr. Gripon was Defendant's forensic psychiatrist and was vital in defending against Plaintiff's claims of mental anguish. Mr. Cox was Defendant's vocational rehabilitation expert and was vital in supporting Defendant's mitigation defense and establishing Swafford's substantially similar employment.

At a bare minimum, and in the alternative, under Fed. R. Civ. P. 26(b)(4)(E), this Court should require Plaintiff to pay Defendant for the time Defendant's retained testifying experts spent in responding to Plaintiff's discovery. For depositions, the party seeking discovery should pay the expert's fee for time spent preparing for, traveling to and from, and attending a deposition. *Haarhuis v. Kunnan Enters.*, 177 F.3d 1007, 1015-16 (D.Cir. 1999); *Borel v. Chevron USA Inc.*, 265 F.R.D. 275, 278 (E.D.La. 2010); *Rogers v. Penland*, 232 F.R.D. 581, 582-83 (E.D. Tex 2005) (entitled to expert fees even when not called at trial). As such, under Fed. R. Civ. P. 26(b)(4)(E), Defendant seeks the following retained testifying expert expenses: (1) $4,750.00 for Dr. Gripon's deposition, and (2) $2,000.00 for Dr. Cox's deposition. *Ex. 15, Defendant's letters to Plaintiff seeking reimbursement for Dr. Gripon's Deposition dated November 10, 2011, and January 16, 2012 (with attached invoices); Ex. 16, Defendant's letter to Plaintiff seeking reimbursement for Dr. Cox's Deposition dated August 15, 2011 (with attached invoices).*[12]

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, DynMcDermott Petroleum Operations Company prays that this motion be granted and that Defendant recover its attorneys'

---

[12] If Defendant is awarded these expenses under 42 USCA § 2000e-5(k), Defendant will not seek these expenses under Fed. R. Civ. P. 26(b)(4)(E) because this will result in a double recovery of expert expenses.

fees, paralegal's fees, and expert expenses incurred in defending against the EEOC's ADEA and ADA lawsuit and all other relief, general and special, at law and in equity to which Defendant is justly entitled.

Respectfully submitted,

**GERMER GERTZ, L.L.P.**
Post Office Box 4915
Beaumont, Texas 77704-4915
(409) 654-6700 – Telephone
(409) 835-2115 – Telecopier
    /s/  *James W. Henges*
**James W. Henges**
State Bar No. 00790860
**James R. Old, Jr.**
State Bar No. 15242500
**Frank T. Messina**
State Bar No. 24070265

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the 28th day of February, 2012.

    /s/  *James W. Henges*
**James W. Henges**

## CERTIFICATE OF CONFERENCE

This will certify that I, Frank Messina, discussed the filing of the above Motion for Attorneys' Fees, Paralegal's Fees, and Expert Expenses with Plaintiff's attorney. I spoke with Plaintiff's attorney on February 21, 2012 about Defendant's demand for the aforementioned expenses, arguments establishing the same, and the filing of the Motion. The parties were unable to come to a resolution on Defendant's demand for attorneys' fees.

**Frank T. Messina**

15